IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 3:10-00250 |
| | ) | Judge Trauger |
| MATTHEW DEHART | ) | |

## MEMORANDUM AND ORDER

Pending before the court is the Motion to Dismiss filed by defendant Matthew Dehart (Docket No. 15), to which the United States has filed a response (Docket No. 24). For the reasons discussed below, the defendant's motion will be denied.

## BACKGROUND

The defendant, Matthew Dehart, has been indicted on charges of producing and transporting child pornography. Dehart was initially arrested on August 5, 2010 in or near Bangor, Maine.[1] The defendant was ordered removed from the District of Maine on August 11 and was transported to the Middle District of Tennessee, arriving in Nashville, Tennessee on September 8, 2010.

---

[1] There is some confusion over the exact date of arrest. One entry in this court's docket indicates that the defendant was arrested on August 9, 2010, and this is the date that the United States mentions in its brief. But the docket in the District of Maine, where Dehart was arrested, states that he was arrested on August 5, 2010. (Docket No. 3 at 8.) Furthermore, the criminal complaint and an arrest warrant were signed by a Magistrate Judge in this district on August 6. (Docket Nos. 1, 2.) This is consistent with Federal Rule of Criminal Procedure 5, which requires that, before a defendant who has been arrested without a warrant may be transferred to the district where the crime occurred, an arrest warrant must issue from the transferee district. Fed. R. Crim. Pro. 5(c)(3)(B). For the purposes of this motion, the court will assume that the defendant was arrested on August 5, 2010.

1

During the initial hearing in the Middle District of Tennessee, the defendant orally moved to set the case for a detention hearing, and the Magistrate Judge instructed him to file a written motion. The defendant filed a Motion to Revoke or Amend Detention Order on September 14, 2010. The United States filed a response, and the Magistrate Judge denied the motion by written order on September 24. The defendant was then indicted on October 6, 2010.[2]

## ANALYSIS

The defendant has now filed a Motion to Dismiss pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(b).

**I.**     **Speedy Trial Act**

The Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, provides that an indictment must be filed within 30 days of arrest. *Id.* § 3161(b). If the government fails to indict the defendant within the 30-day time frame, the court must dismiss the indictment. *Id.* § 3162(a)(1). The statute provides, however, that the court should automatically exclude certain time periods from that 30-day calculation:

> (h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed . . . :
>
>   (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to– . . .
>
>     (D) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion; . . .

---

[2] The defendant states that he was indicted on October 7, but this is incorrect. (*See* Docket No. 12.)

> (F) delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable . . . .

*Id.* § 3161(h).

## II. Application

Sixty-two days elapsed between the defendant's August 5 arrest and his October 6 indictment. The defendant argues that this violates the Speedy Trial Act and that his indictment should be dismissed with prejudice. (Docket No. 15 at 1-2.) In response, the United States argues that, taking into account the periods excluded by the statute, it filed the indictment within the 30-day limit. (Docket No. 24 at 4-5.)

The resolution of the instant motion turns on two issues: (1) whether the entire time spent transporting the defendant is excludable, and (2) whether the time during which the defendant's Motion to Revoke was pending is excludable.

### A. Transportation Time

Between the August 11 Removal Order and the defendant's September 8 arrival in Nashville, 28 days elapsed. Section 3161(h) provides that "delay resulting from transportation of any defendant from another district" is excludable from the 30-day calculation, "except that any time consumed in excess of ten days from the date an order of removal . . . and the defendant's arrival at the destination shall be presumed to be unreasonable." 18 U.S.C. § 3161(h)(1)(F).

3

Thus, transportation time over ten days is usually not excludable. The defendant argues that, here, 18 of the transportation days should count against the Speedy Trial clock. (Docket No. 15 at 2 n.2.) But the statute only provides "a *presumption* of unreasonableness, not a conclusion of unreasonableness." *United States v. Turner*, 602 F.3d 778, 785 (6th Cir. 2010). "If legitimate problems arise in transporting a defendant, the government legitimately may rebut the presumption." *Id.*

The United States has submitted an affidavit from Tommy Thompson, this district's Chief Deputy of the United States Marshals Service ("USMS"), which was responsible for transporting Dehart from rural Maine to Tennessee. (Docket No. 24, Ex. 1.) The affidavit recounts the route that USMS used to transfer Dehart from Maine to Tennessee: (1) first, from Penobscot County Jail in Maine to Strafford County Jail in New Hampshire; (2) then, via bus to Brooklyn, New York; (3) then, via airlift to Oklahoma City, Oklahoma;[3] (4) then, via airlift to Memphis, Tennessee; (5) then, via ground transport to Nashville. (*Id.* ¶ 2.)

There were a number of delays. A Bureau of Prisons bus runs weekly on Thursdays and Fridays between New Hampshire and Brooklyn. (*Id.* ¶ 3.) But, because the USMS received the Removal Order on August 12, it was unable to transfer the defendant to New Hampshire in time to catch the August 13 (Friday) bus. (*Id.*) Thus, Dehart was not transported to New Hampshire until August 19, and he reached Brooklyn the next day, August 20. (*Id.*) Furthermore, USMS airlifts have been cut back "due to a lack of funding." (*Id.* ¶ 4.) Consequently, the defendant did

---

[3] The affidavit states that "Oklahoma City is the centralized prisoner transportation hub for geographic reasons and has served as the base location for the DOJ's prisoner transportation center since 1979." (Docket No. 24, Ex. 1 ¶ 2.)

not arrive in Oklahoma City until August 30, and he was airlifted to Memphis a week later, on September 7. (*Id.* ¶¶ 4-5.) He arrived in Nashville the next day.

The United States argues that transportation took longer than ten days in this case "due to the limited funds available for cross country transportation of inmates, which limited the number of available airlifts." (Docket No. 24 at 5.) On each leg of Dehart's transport, he was placed on the next available bus or airlift; the delays resulted from the fact that prisoner transportation is bound by certain economic constraints. In particular, the USMS reduced the frequency of airlifts in August and September to address budgetary problems. (Docket No. 24, Ex. 1 ¶ 4.)

The Speedy Trial Act is silent regarding the showing that the government must make to rebut the statute's presumption of unreasonableness on trips exceeding ten days, and there appears to be little on-point Sixth Circuit case law. The most relevant statement comes from *Turner*, which noted that the presumption may be rebutted with evidence that "legitimate problems" arose in the prisoner's transport. 602 F.3d at 783, 785 (finding that presumption was not rebutted by a "vague[]" explanation of the "'difficulty suffered by . . . the [USMS] in effectuating a timely . . . transportation to and from the facility'"); *see also United States v. Tinklenberg*, 579 F.3d 589, 596 (6th Cir. 2009) (noting that a delay over ten days "is presumptively unreasonable, and in the absence of rebutting evidence to explain the additional delay, this extra time is not excludable"); *United States v. Perez*, 306 Fed. Appx. 929, 931 (6th Cir. 2009) (mentioning the district court's determination that "the government had not explained why it was reasonable to take more than ten days to transport [the prisoner] and thus had not rebutted the ten day statutory presumption").

5

Here, the court concludes that the USMS's budgetary woes, and the resulting infrequent airlifts, are a "legitimate problem" and that the actions taken in response to the problem were reasonable and in good faith. Although 28 days is a lengthy journey, Bangor, Maine is over 1,300 miles by road from Nashville. On each leg of the defendant's journey, he was placed on the earliest available bus or airlift. The only viable way to shorten the defendant's transport would have been (a) to place him on a more direct route to Nashville or (b) to run more buses and fly more airlifts. In its attempt to balance swift travel with economic realities, the USMS acted reasonably in doing neither.

This decision contrasts with the decisions of courts in other circuits. In *United States v. Jervey*, 630 F. Supp. 695 (S.D.N.Y. 1986), the court held, without explaining why, that the Speedy Trial Act's presumption of unreasonableness "applies . . . unless some extraordinary event occurred in the case to make compliance with the directions of Congress unfeasible." *Id.* at 697. The court then rejected the government's argument that a cross-country transport of 20 days was reasonable because of budgetary constraints, stating that "[t]he Government's good faith, without more, cannot [rebut the presumption]." *Id.* at 698. Similarly, in *United States v. Castle*, 906 F.2d 134 (5th Cir. 1990), the Fifth Circuit found that "the presumption of unreasonableness [cannot] be rebutted by a showing of diligent effort," and it adopted the "extraordinary event" standard from *Jervey*. *Id.* at 137-38. The court rejected the government's argument that budgetary constraints imposed by a particular act of Congress sufficiently

explained the prisoner's 22-day transport from Louisiana to Missouri.[4]  *Id.* at 138.

Neither of these cases, of course, is binding on this court.  The "extraordinary event" standard adopted by *Jervey* and *Castle* contradicts the lower "legitimate problem" standard suggested by the Sixth Circuit in *Turner*.  Accordingly, this court declines to follow those cases and finds that the defendant's entire 28-day transport should be excluded from the Speedy Trial calculations.

B.     **Time During Which the Defendant's Motion was Pending**

The court must also determine whether it should exclude the ten days between the defendant's filing of his Motion to Revoke and the Magistrate Judge's decision on the motion. Section 3161(h) provides that the court should exclude from the 30-day calculation "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."  18 U.S.C. § 3161(h)(1)(D).  The defendant argues that the Sixth Circuit's decision in *Tinklenberg* prevents this time from being excluded (Docket No. 15 at 2 n.2), while the United States argues that *Tinklenberg* is distinguishable from this case.

In *Tinklenberg*, the district court had, one or two months in advance, scheduled the

---

[4] The Fifth Circuit pointed to a section of the House Report on the Speedy Trial Act, also quoted by the Ninth Circuit in *United States v. Taylor*, 821 F.2d 1377 (9th Cir. 1987), *rev'd on other grounds*, 487 U.S. 326 (1988), that states: "The Committee cannot conclude that inconvenience to the United States marshals or the minimal expense of transporting prisoners is an excuse for delaying the arraignment of a defendant."  H. Rep. No. 1508, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 7401, 7423-24.  But this part of the report speaks to § 3161(c), which in 1974 provided a ten-day time limit between the filing of an indictment and the defendant's arraignment.  It did not speak to the 30-day limit between the defendant's arrest and the filing of the indictment.

defendant's trial for August 14, 2006. 579 F.3d at 592. After August 1, the parties filed three pretrial motions: the government filed two evidentiary motions, which sought leave to take a video deposition of a witness and to introduce two guns as evidence at trial, and the defendant filed a motion to dismiss. *Id.* at 597. All of the motions were resolved without hearing before trial. Neither party requested an extension of the trial date, and the trial began as scheduled. *Id.* The Speedy Trial Act provides that trial must begin within 70 days of the filing of the indictment, 18 U.S.C. § 3161(c)(1), and the Sixth Circuit held that the time during which these motions were pending should not be excluded from the 70-day calculation. *Tinklenberg*, 579 F.3d at 599.

The court reasoned that § 3161(h)(1)(D), by its terms, only excludes "'delay *resulting from* any pretrial motion.'" *Id.* at 598 (quoting 18 U.S.C. § 3161(h)(1)(D)). Thus, the court held that "a pretrial motion must actually cause a delay, or the expectation of a delay, of trial in order to create excludable time." *Id.* This conclusion conflicted with the decision of every other federal appellate court to address the issue, each of which "held that the filing of any pretrial motion stops the Speedy Trial clock, regardless of whether the motion has any impact on the trial's start date."[5] *Id.* (collecting cases from nine other circuits); *see also United States v. Hills*, No. 09-2151, 2010 U.S. App. LEXIS 17186, at *10 (7th Cir. Aug. 18, 2010) (rejecting *Tinklenberg* and noting the consensus of other circuits).

Because none of the motions in *Tinklenberg* "caused any delay of the trial, or even

---

[5] The Supreme Court has granted *certiorari* to review this aspect of *Tinklenberg*, presumably because of the circuit split on this issue. *United States v. Tinklenberg*, No. 09-1498, 2010 U.S. LEXIS 5759 (U.S. Sept. 28, 2010).

threatened to delay the trial," the Sixth Circuit did not exclude the time from the 70-day calculation. 579 F.3d at 599. The court noted the "obvious understanding of the parties and the court that the motions filed just before trial would not affect the trial schedule. *Id.* at 600. The court further stated that allowing the government to extend the Speedy Trial clock by filing "mundane pretrial motions" would frustrate the purpose of the Speedy Trial Act. *Id.* at 599.

The facts of the present case are entirely distinguishable from those in *Tinklenberg*. Most obviously, this case involves the 30-day limit from arrest to indictment, not the 70-day limit from indictment to trial. Here, unlike in *Tinklenberg*, there was no set trial date (or, for that matter, set indictment date). It is therefore impossible for the court to say with certainty that the defendant's motion did not cause any delay. Indeed, any non-frivolous post-arrest motion has the potential to delay an indictment, because "[p]retrial motions necessarily take the time of prosecutors to respond and courts to evaluate." *United States v. Wilson*, 835 F.2d 1440, 1442 (D.C. Cir. 1987), *overruled on other grounds by Bloate v. United States*, 130 S. Ct. 1345 (2010). It is possible that, in responding to the defendant's motion, the United States was forced to divert resources that otherwise would have gone toward securing a quicker indictment. Unlike in *Tinklenberg*, there was no "obvious understanding" between the parties that the defendant's motion would not delay proceedings. Furthermore, *Tinklenberg*'s concern that the government might intentionally cause delay by filing a flurry of inconsequential motions is not implicated here, because the Motion to Revoke was filed by the defendant.

Because of these differences, *Tinklenberg* does not mandate that the time at issue here be included in the court's 30-day calculation. Accordingly, the court finds that the ten days

9

between the defendant's filing of his Motion to Revoke and the Magistrate Judge's resolution of the motion should be excluded under § 3161(h)(1)(D).

When the 28 days excludable under § 3161(h)(1)(F) and the 10 days excludable under § 3161(h)(1)(D) are subtracted from the 62 days between the defendant's arrest and indictment, it leaves only 24 days that count against the Speedy Trial clock. Because this is within the 30-day pre-indictment limit, the United States did not violate the Speedy Trial Act.[6]

## **CONCLUSION**

For all of the reasons discussed above, the Motion to Dismiss filed by defendant Matthew Dehart (Docket No. 15) is **DENIED**.

It is so Ordered.

Entered this 27th day of October 2010.

_____
ALETA A. TRAUGER
United States District Judge

---

[6] Even if the government had violated the 30-day limit, the court would dismiss the indictment without prejudice. The Speedy Trial Act provides that, in deciding whether to dismiss with prejudice, the court should consider three factors: "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on . . . the administration of justice." 18 U.S.C. § 3162(a)(2). Here, each factor weighs in favor of a dismissal without prejudice: production of child pornography is a serious offense; any delay was not intentional and, instead, resulted from an oversight by the Assistant United States Attorney (*see* Docket No. 24 at 7); and the defendant's ability to prepare his case has not been prejudiced.