IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | } |
| | } |
| V. | } Criminal Docket No. 3:10-cr-00250-1 |
| | } JUDGE TRAUGER |
| MATTHEW PAUL DEHART | } |

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS EVIDENCE

The Defendant, Matthew Paul Dehart, by and through his attorney, respectfully submits the following supplemental memorandum in support of his motion to suppress evidence. (Refer to Document Nos. 88 & 89).

Argument

**Part I–Overbreadth**

By applying the law as succinctly set out by the Court in *U.S. v. Richards*, 659 F.3d 527 (6th Cir. 2011), it is clear that the search warrant in this case (See Document No. 88-1) is clearly overbroad even without the excision of the intentional misrepresentations of the affiant and other investigating officers that the Defendant is the source of "chats" or e-mails allegedly enticing the minors herein to send sexually explicit photographs of themselves over the internet, allegedly to the Defendant. A careful comparison of the facts/law in this case to those in *Richards* is necessary.

Detective Kurt Pritchett of the Evansville Police Department is the Affiant. He incorporates into his affidavit his own supplemental report, a "probable cause" report authored by Franklin, Tennessee Detective Brett Kniss and a "summary report" compiled by Franklin

1

Detective Sgt. Eric Anderson. (See Document No. 88-1, pages 2-5).

Detective Pritchett states that he "is investigating crime(s) of: Possession of child pornography and child solicitation occurring between June 2008 through January 2009 at the location of :Memphis, Tennessee and Warrick County, Indiana." (See Document No. 88-1, page 2, paragraph A). In furtherance of the investigation, Detective Pritchett requests a warrant to search the residence of Matthew Dehart, 10270 Bourbon Street, Newburgh, Warrick County, Indiana including outbuildings and other vehicles on the premises. (See Document No. 88-1, page 2, paragraph B). Detective Pritichett then states "That in said search your affiant intends to, and will be searching for, *but not limited to*, (emphasis added) the following particular items/objects:

> "computer, computer equipment, computer hardware, compact discs, DVDs any audio and video, tapes, photographs, recording equipment, cameras, video cameras, wireless cameras, other electronics with recording capabilities, wireless phone, firearms and ammunition as well as contents and files stored on any of the above media. (See Document No. 88-1, page 2, paragraph C).

The remainder of that paragraph is language defining these terms with the exception of "computer-related documentation" which is not included in the items requested. Likewise, there is no request for authorization to obtain "computer passwords or other data security devices." (See Document No. 88-1, page 4). The Affiant goes on to state that he believes that evidence of the crimes listed in paragraph (A) of the affidavit may be present on these items. (See Document No. 88-1, page 4, paragraph D).

**Nowhere in the above cited affidavit does Detective Pritchett request that the**

**search of the items he requests authorization to seize be related to files containing sexually explicit images of the minors who allegedly were enticed by the Defendant to send sexually explicit images of themselves to the Defendant. Further, nowhere in the above cited affidavit does Detective Pritchett ever ask for authorization to search the items he requests to seize for written communications (chats or e-mails) between the minors and the Defendant. Instead, he simply asks for *carte blanche* authority to search not only the listed items without limitation but for other items "not limited to" those requested.**

The actual "warrant" authorizing the search follows the overbroad request by stating:

> You are authorized and ordered, in the name of the State of Indiana, with the necessary and proper assistance, to enter into or upon the particular residence, structure, person and/or place set forth in paragraph (B) of the Affidavit attached herein, and there diligently search for the item(s) and/or object(s) listed in paragraph ( C ) of the Affidavit attached herein. You are ordered to seize such property, and any part thereof, found on such search, and to hold said items securely until, further order of this Court. (See Document No. 88-1, page 15).

Not even the issuing Judge authorizes the persons executing the search warrant permission to break into the items seized to search for whatever is deemed to be evidence of child pornography and/or child solicitation. His authorization fails to include a search for computer "contents". Thus, not only is the warrant overbroad in the items to be seized, the officers went beyond the authorization contained in the warrant by searching for contents before obtaining "further order of this Court".

In the recent case of *U.S. v. Richards*, 659 F.3d 527 (6th Cir. 2011), the Appellate Court reviewed, among other issues, the law related to the analysis of a search warrant for overbreadth/lack of particularity requirements. In *Richards*, the Government investigators obtained a search warrant for a particular server at a business that housed approximately 2000

3

other servers. (*Id.* at p. 534). Even though the investigators had probable cause to search this particular server for evidence of child pornography related to a particular web site (*JustinFriends*), this did not prevent the search of the remaining server for other evidence as well. (*Id.* at p. 540-541). However, unlike the case *sub judice*, the items which were to be searched for were much more specific and comprehensive. (*Id.* at p.535).

> It is well-settled that items to be seized pursuant to a search warrant must be described with particularity to prevent the seizure of one thing under a warrant describing another in violation of the Fourth Amendment. (citations omitted). The chief purpose of the particularity requirement (is) to prevent general searches by requiring a neutral judicial officer to cabin the scope of the search to those areas and items for which there exists probable cause that a crime has been committed. (citations omitted). As we stated in *Ellison v. Balinski*, 625 F.3d 953 (6th Cir. 2010), "the history of the Fourth Amendment (demonstrates that it) was enacted in part to curb the abuses of general warrants, devices which provided the British officers with broad discretion to search the homes of citizens of the Colonies for evidence of vaguely specified crimes." *Id.* at 958; other citations omitted. *U.S. v. Richards*, 659 F.3d 527, 536-537 (6th Cir. 2011).

The items sought to be searched for in the *Richards* warrant were related to specific web sites for which there was probable cause to believe child pornography was being stored. Even though the search warrant authorized the search of an entire server, the warrant limited the officers to what they could search and seize. If during the course of that search, items not related to those requested were discovered, then that would simply be incidental to what was otherwise a lawfully issued warrant. *U.S. v. Richards*, 659 F.3d 527, 537-542 (6th Cir. 2011). The Richards warrant did not authorize a "free-ranging search". (*Id.* at 541-542). The use of the term "free-ranging" to characterize the search warrant herein would be an understatement.

In an effort to give the Government the benefit of a loose construction of the four corners of the search warrant documents, the reports that are incorporated into the affidavit of Detective Pritchett do request a search "for photos of the known victims in the residence, as well

4

as the computer of Matthew Dehart. The information I am also requesting the warrant to authorize searching for the contents of the computer.(sic)." (See Document No. 88-1, page 8). There is still no clarification on what the "contents" of the computer refers to or is limited to. This is still just another example of the request by Detective Pritchett for *carte blanche* authority to search for and seize anything at the Dehart residence without limitation. (Is it just images of child pornography or text files as well [chats and e-mails]?). Within the four corners of all the documents submitted in support of the search warrant there is never a request to search and seize text files.

> A warrant may permit only the search of particularly described places and only particularly described things may be seized. As the description of such places and things becomes more general, the method by which the search is executed become[s] more important—the search method must be tailored to meet the allowed ends. And those limits must be functional. For instance, unless specifically authorized by the warrant there would be little reason for officers searching for evidence of drug trafficking to look at tax returns (beyond verifying the folder labeled "2002 Tax Return" actually contains tax returns and not drug files or trophy pictures). *U.S. v. Richards*, 659 F.3d at 539.

### Part II–*Franks* misrepresentations

Here, the initial question this Court must address is whether the affidavit of Det. Pritchett combined with the reports of Detectives Pritchett, Anderson and Kniss establish probable cause to believe that there is evidence of child pornography or child solicitation present at Dehart's residence in Indiana. This question can only be answered by examination of Detective Kniss' statement of probable cause. These "facts" are as follows:

1. Minor #1 and Minor #2 know Dehart.

2. Minor #1's parents found sexually explicit photographs on their son's cell phone.

5

3. The minors claim that Dehart asked them to send a picture of each person's penis to him and to an e-mail account belonging to some teenage girls in Indiana.

4. The minors claim that Dehart had sent several pornographic images to them.

5. The minors have met with Dehart personally but there is no mention of any inappropriate sexual contact.

6. Detective Kniss has examined the minor victims' computers and found:

   A. a video clip of Minor #1 masturbating;

   B. E-mail addresses used for communication with Dehart, some of which nude photographs of the minors were sent;

   C. Chat logs.

The interpretation of the chat logs (See Document 88-1, pages 12-13) which includes editing by Detective Kniss without explanation or qualification constitutes an intentional misrepresentation of facts material to the issuance of the warrant in violation of *Franks v. Delaware*, 438 U.S. 154, 57 L.Ed.2d 667, 98 S.Ct. 2674 (1978). The repeated reference to an "alleged" or "purported" teenage female from Indiana without any explanation for that conclusion combined with the statement in the last paragraph of his "probable cause" statement that the IP addresses of the alleged females have not been retained reinforces the obvious conclusion that someone other than Dehart was communicating with the minors regarding the transmission of their photos/videos.

Attached hereto as Exhibits A & B are the unedited chat logs provided in discovery which are partially reproduced by Detective Kniss in his statement of probable cause. (See Document 88-1, pages 12-13). Exhibit A demonstrates that without explanation, Detective Kniss has inserted the name of the Defendant for the screen name, "viralcure". It is assumed

6

also that victim 1 goes by the screen name "warcraftplaya11". However, there is absolutely nothing in the search warrant documents that demonstrates how Agent Kniss arrived at the conclusion that this is a conversation between victim 1 and the Defendant. Likewise, in Exhibit B, the conversation is between "mandylion92" and "warcraftplaya11" and not with "alleged female from Indiana". Again, there is nothing to indicate that "mandylion92" is not a female. In fact, a video of a female was found on the victim's computer. (See Document 88-1, pages 13).

> Q. (By Attorney Scruggs): This case revolves around – in fact, your affidavit, arrest warrant and search warrant revolves around the supposition that somehow or another Mr. Dehart was assuming the identities of some females who were communicating with James (victim) in an effort to get James to send to them pornographic pictures of himself?
>
> A. (Detective Kniss): That is part of it, yes.
>
> Q. That's what it's about, right?
>
> A. That is part of it, yes.
>
> Q. Okay. And you have never been able to prove whether or not these females either exist or don't exist, correct?
>
> A. I have not been able to prove that they don't exist.
> (Document 105, Transcript of Hearing of May 22, 2012, page 70).

> Q. In fact, this whole incident arose from an incident that occurred maybe, I don't know, six months or year earlier, involving – probably wasn't that far back – involving a situation where I believe James' house was toilet papered. Is that correct? Are you familiar with that?
>
> A. I am familiar with that, but this did not start from that.
>
> Q. When James' house was toilet papered, he pointed to Matthew Dehart as being the person who did that, correct, or being responsible for it, right?
>
> A. He believed that at the time, yes.

7

> Q. And that apparently led to the discovery of this information of these items on his phone, correct?
>
> A. That I'm not aware of.
>
> Q. Okay, All right. And one of the items on James' phone was, in fact, a picture of a nude female. Is that correct?
>
> A. I don't recall any pictures of nude females on his phone. I don't recall----
>
> Q. Were there not some pornographic pictures of the females on his phone?
>
> A. I don't recall any images on his phone.
> (Document 105, Transcript of Hearing of May 22, 2012, page 69).

Detective Kniss can't prove whether the female he represents in his probable cause statement (Document No. 88-1, page 13) exists or not so he represents her as being "alleged". Yet, the Government, in its response to Ms. Hodde's discovery letters of July 25 & November 21, 2011 specifically stated that, "However, I will note, although I do not think it is relevant, that the victim in Count One had deleted "sexting" photograph of at least one minor girl". (Document No. 70-2, page 3, para. 16). The Government failed to preserve the phone or examine the contents to determine the identity of the female images on victim 1's phone or the source from where the images were sent: "Additionally, the government has made "mirror copies" of the electronic evidence available locally, with the exception of the victim's cell phone, which was returned to the victim's family after the detective downloaded relevant information." (Document No. 73, page 10, Government's Response to Motion to Compel). Thus, a critical piece of evidence which would establish the innocence of the Defendant has been lost/destroyed by the Government.

The misrepresentation of the chat logs is amplified when Detective Pritchett states in

8

his "supplemental report" that "He (Dehart) has posed as juvenile females to obtain these photographs and video by electronic communications." (Document No. 88-1, page 8).

Even if Items 1-5 above are accepted as true, the gross misrepresentation by Detective Kniss which was reinforced by Detective Pritchett in his conclusion that the chat logs point to Dehart as being the person who requested the images sent calls into question the credibility of the minors who purportedly make the claim that Dehart is somehow responsible for their actions in sending out the sexually explicit images of themselves over the internet. To the contrary, if Detective Kniss' misrepresentations are excised as required by *Franks*, the remaining "facts" negate probable cause to believe that Dehart is in any way involved in the crimes being investigated.

## CONCLUSION

Therefore, for all of the reasons cited above, Defendant requests the Court to exclude from the evidence presented at the trial of this matter all items listed in the attached inventory and any other evidence discovered as a result of the seizure of these items.

Respectfully submitted,

/s/ Mark C. Scruggs
Mark C. Scruggs # 10103
Attorney for Defendant
95 White Bridge Road
Cavalier Building, Suite 508
Nashville, TN 37205
615-352-8326

9

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and exact copy of the foregoing has been e-mailed to Ms. Carrie Daughtrey, Assistant U.S. Attorney, 110 Ninth Avenue South, Suite A-961, Nashville, TN 37203, on this the _____ day of June, 2012.

/s/ Mark C. Scruggs
Mark C. Scruggs