

**U.S. Department of Justice**

United States Attorney
Middle District of Tennessee

Suite A-961
110 9th Avenue South
Nashville, Tennessee 37203-3870

Telephone (615) 736-5151
Fax (615) 736-5323

May 18, 2012

Mark C. Scruggs
95 White Bridge Road
Cavalier Building, Suite 508
Nashville, TN 37205

RE: Reports of interviews of Matthew P. DeHart in August 2010
Updates regarding items seized in Canada and from DeHart in Maine

Dear Mr. Scruggs,

I am writing to provide you with information from the interviews of your client in August of 10, 2010. DeHart was interviewed on August 6, 2010; August 7, 2010; and August 20, 2010. For each of those dates, an FBI agent who participated in the interview prepared a report ("302") about the interview, such that there are three reports. The report from August 6, 2010, is not classified, and thus I have enclosed it with this letter. Both of the subsequent interviews were classified, and I am unable to provide those to you in full. I did, however, provide them to Judge Trauger on Monday, May 14, 2012. After reviewing those reports, she instructed me to provide the following information from those reports, all of which came from unclassified sections of the report.

1. DeHart provided several email addresses as ones that he had created and used to communicate online:
   - MDSICHERHEIT@GMAIL.COM
   - ULTIMATTEO@AIM.COM
   - KMFDMK@AIM.COM
   - MATTEOALMIGHTY@AIM.COM
   - MAFFEES2@GMAIL.COM
   - ERLOESUNG@GMAIL.COM
   - MAFEES2@GMAIL.COM
   - INFINTAS5005@EXCITE.COM
   - PJDGLOBAL@GMAIL.COM
   - ULTAMATTHEW@EXCITE.COM

2. DeHart stated that he also used an email account FAWKES(unknown number)@HUSHMAIL.COM, where the unknown number was DeHart's cellular telephone number (not specified), and the password was the address in reverse, adding one (1) to each digit and moving one (1) letter forward alphabetically for each letter.

3. DeHart stated that he had bought and used several disposable mobile cellular communication devices, including but not limited to the following area codes: 812, 845, and 201. He recalled owning and utilizing cellular telephones from Net10, Motorola, Samsung, BoostMobile, and Virgin. He bought two phones at the Dollar Store in Newburgh, Indiana; another from a store next to Wesselman's Supermarket in Evansville, Indiana; two more from the Wal-Mart on the East side of Evansville, Indiana; and one The Source in Charlottetown, Prince Edward Island (PEI). The one from PEI is now in the possession of the FBI. He also stated that he purchased a Mexican disposable cellular telephone that was registered through Telcel and that the registration paperwork was located at his parents' house.

4. DeHart stated that he used disposable telephones for different purposes, including one that he used for his guild-master managerial duties for the Massive Multiplayer Online Role-Playing Game (MMORPG) World of Warcraft. He believes that several of these telephones were seized during the January 25, 2009 search, and as you know, four cellular phones were seized at the time the search warrant was executed. DeHart advised that his father threw away the rest of his "stuff" after the search, as a protective measure, should any of the items contain incriminating evidence, which included games, CDs, DVDs, and other electronic media storage devices.

5. DeHart recalled using a mobile cellular communication device with the following specific numbers: 845-323-3177.

6. DeHart purchased an Acer netbook computer and a Sumsung disposable cellular telephone with Net 10 service from a Wal-Mart in Texarkana, Texas.

7. DeHart stated that he used the software Truecrypt to hide things on the Acer computer.

8. DeHart stated that his primary computer was a Gateway FX51 gaming laptop.

9. DeHart listed his Skype address P1L2M3D58 or P1L2M3D5A as an emergency contact account to reach his parents.

10. DeHart stated that he lived with a host family in Montreat from April 10 to June 18, 2010. He stated that his host family in Montreal had the name of "Crassaty" (NFI) and lived in the 300 block of Boulevard Toupin. DeHart's father believes the specific address was 3445 Boulevard Taupin, Montreal, Quebec, Canada. DeHart stated that he used a couple of computers in the host family's home when he stayed there and that he also used the computers in the computer labs at the International Language School in Montreal.

11. DeHart stated that the Acer laptop computer and two other computers were located at 37 Kensington Court, Apartment #13, Charlottetown, Prince Edward Island, Canada; and that the Acer computer was in the microwave in that apartment.

Error! Main Document Only.
In the matter of United States v. Matthew DeHart                                    Page 2

Case 3:10-cr-00250   Document 123-2   Filed 09/07/12   Page 2 of 15 PageID #: 686

12. DeHart stated that the following items that may have been seized on January 25, 2009, belonged to a friend by the name of Deal: Kensington thumb drive; 3 external hard drives; 1 Seagate Barracuda; and 1 Maxtor, a large black Western Digital hard drive. DeHart further stated that Deal had used DeHart's computer in Terre Haute, Indiana.

Additionally, I have enclosed a copy of the inventory of items seized in both Maine and Canada. To date, however, we have received only the electronic evidence. Apparently the agents in D.C. did not understand that we wanted all seized items to be transported to Nashville, but the additional items are in route now or should be before the end of the week. The electronic evidence will need to be reviewed to verify that they are "clean," i.e. do not contain any child pornography, after which we will provide you a mirror image of all the "clean" devices upon receipt of appropriate hard drive(s) and will make the other(s) available for review upon request.

Please feel free to contact me at 615-401-6583 or by email at Carrie.Daughtrey@usdoj.gov if you have any questions or wish to discuss anything in this letter in more detail.

Sincerely,

JERRY E. MARTIN
United States Attorney

S. Carran Daughtrey
Assistant United States Attorney
110 Ninth Avenue South, Suite A-961
Nashville, Tennessee 37203-3870
615-736-5151

Enclosures:
   Inventory of items seized in Maine and Canada
   FBI Report of Interview on August 6, 2010

Error! Main Document Only.
In the matter of United States v. Matthew DeHart                                                                Page 3

Case 3:10-cr-00250   Document 123-2   Filed 09/07/12   Page 3 of 15 PageID #: 687

FD-302 (Rev. 10-6-95)

- 1 -

FEDERAL BUREAU OF INVESTIGATION

Date of transcription  08/26/2010

  MATTHEW PAUL DEHART, date of birth June 11, 1984, Social Security Account Number 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, was advised of the identity of the interviewing Agents. DEHART was being detained by the U.S. Immigration and Customs Enforcement, at the Calais Port of Entry, for questioning based on an alert that DEHART was wanted for questioning in an espionage matter. The interview began at approximately 3:15 p.m. DEHART provided the following information:

  DEHART was planning to attend DEHOLLAND COLLEGE, Prince Edward Island, Canada, in the fall. He is currently staying in the dormitory on campus. He plans to earn a degree in welding. He was coming across the border from Canada to Maine to get a student visa at the Port of Entry and cross back over to Canada. DEHART is originally from Indiana and lists his home address as 10270 Bourbon Street, Newburgh, Indiana (IN), telephone number 812-480-9134, which is where his parents currently live.

  DEHART graduated from high school in Indiana in 2002. After graduating from high school, he attended different colleges, including CORNING COMMUNITY COLLEGE and INDIANA UNIVERSITY TECH. He held some odd jobs, then joined the AIR NATIONAL GUARD (ANG) in February 2008. After basic training he was assigned as an intelligence analyst stationed in Terra Haute, IN. He worked on the intelligence wing while he was waiting to go to intelligence school. He was discharged from the ANG in June 2009.

  After leaving the military, he went to Mexico and stayed with a friend, HEATHER ENGLASIUS, in Decristo, Mexico. He was in Mexico the beginning of February 2009 for one and a half weeks. He had a transient pass to drive to Neuavo Lorado, Mexico. He visited friends in Minor Bay, Mexico. He left his car in Mexico which had his parent's expired New Jersey license plate on it. In September 2009, he went to Cancun with his parents. DEHART thought this interview was about leaving his car in Mexico. From April 25, 2010 until June 18, 2010, DEHART was living in Indiana. He then went to Montreal, Canada, to learn French at the International Language School.

  DEHART was then advised that he was being interviewed concerning his visit to an Embassy in Washington, D.C. He was being advised of his Constitutional rights but he said he wanted to

---

Investigation on  08/06/2010  at  Calais, ME

File #  65U-WF-241612                    Date dictated

by  SA JAMES McCARTY and SA JAMES P. HERBERT/ama

Case 3:10-cr-00250  Document 123-2  Filed 09/07/12  Page 4 of 15 PageID #: 688

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

plead the Fifth Amendment. DEHART was told that pleading the Fifth Amendment was for court proceedings and he was read his Rights. DEHART agreed to talk but refused to sign the Advice of Rights form.

DEHART was looking for work and went to Washington, D.C., in February or March 2010. He had certificates for A PLUS, NETWORK PLUS, and CISCO and wanted to work in computers. He went into the Russian Embassy and asked to talk to someone about getting a job. He was told to wait until some could talk to him. After a while he was asked to come back after lunch. DEHART left for an hour and then went back. He was brought into a separate room and was there for three hours. While he was there, he talked to an intelligence person by the name of EVGANEY. He told EVGANEY he had a military background and EVGANEY asked for his military identification card. He showed him his military identification card which he took and left the room. He brought it back to him a short time later. The Russians also took his Social Security Account Number and his contact numbers. DEHART provided him with his cell phone number but he threw his cell phone away after leaving the Embassy. He provided informatio to EVGANEY about military radar systems that he made up after doing research on the internet.

Both DEHART's parents were in intelligence in the U.S. Air Force. DEHART wanted to do something for the U.S. government and decided to go into the Russian Embassy to do something covert and find out who their intelligence officers were. DEHART has never had any access to classified information since he was in the Air Force. He was discharged before he went to intelligence school. He wanted to bring the Russians some information so he looked up the technical details of United States military radar systems on the Internet. He brought the magazine from the student flight that had photographs and names of all the students in his class at Terra Haute, to the Russians and provided printouts from GLOBAL SECURITY. The Russians took the false classified documents he created. He had brought his passport with him to the Russian Embassy in case they took him to Russia. The Russians asked if the U.S. used predator drones over Georgia.

The next day he went to the Venezuelan Embassy for about an hour. He made up the same radar information that he told the Russians. The Venezuelans wanted to know about air defense and if the Americans studied the Venezuela air defense. He talked to them about his intelligence unit at Terra Haute. He gave them stuff on global security and created documents from the Internet. He

FD-302a (Rev. 10-6-95)

65U-WF-241612

Continuation of FD-302 of   MATTHEW PAUL DEHART  , On 08/06/2010 , Page 3

believes he lost his passport when he visited the Venezuelan Embassy. Once he left the Venezuelan Embassy, he was never contacted again. DEHART did not go to the Cuban Embassy but he did call the Cuban Consulate when he was in Monterey, Mexico.

DEHART did not turn in his military identification card when he left the ANG. He did not know he had too. The Master Sergeant told him that he did not have to turn it in when he was checking out. The ID card expires in 2013.

DEHART provided the following personal two email addresses:

MDSICHERHEIT@GMAIL.COM

MPDE17478@HUSHMAIL.COM

DEHART's father's email is PAULD@NEWBURGHCHURCH.ORG.

DEHART tried to email the Russians but they never emailed him back. The Russian email address was REMENSK@RAMBLER.RU. He told the Russians that he was still in the military when he gave them his military ID. His father gave him a ride to the vicinity of the Russian Embassy and dropped him off. His father knew he was going to the Embassy but could not stop him. He did not bring anything from the military installation and he has told his father everything. He has since destroyed the computer he used to create false military documents and put it in a dumpster at a hotel where he was staying.

DEHART has not seen DANIEL from his INTEL group since he left the service. No one else was working with him when he went to the Embassies. The last person he saw in the military was Chief the day he left.

At approximately 5:20 p.m., DEHART was advised that he was being arrested for production of child pornography on a warrant from the Middle District of Tennessee, Nashville Division. DEHART said that he hasn't been quite forthright with the interviewing agents about his visits to the Embassies and said that he would definitely cooperate at this point.

While he was in the ANG, he used to listen to some of the guys in his unit talk about selling secrets electronically. He specifically said BRENT COOPER and DANIEL (Last Name Unknown) would

FD-302a (Rev. 10-6-95)

65U-WF-241612

Continuation of FD-302 of    MATTHEW PAUL DEHART   , On 08/06/2010 , Page 4

talk about selling secrets. DANIEL hates the country and sold stuff to someone. He had friends in the Air Force Special Operations Service (ASOS).

JACOB DIEL also talked to him about selling secrets. DIEL could go into a defense portal, log in remotely to the personnel database. They would usually use computers at the nearby college. When DEHART was in the Russian and the Venezuelan Embassies, he left contact information for both BRENT and JACOB. The last time he had spoken to JACOB was in April. DEHART believes JACOB has a thumb drive with the information on it. He once watched JACOB get on a portal using his ID. DEHART also believed JACOB's brother is selling information. He works for the ASOS.

At approximately 5:58 p.m., DEHART was transported from Calais to Bangor, Maine. On the trip back, DEHART continued cooperating by saying that JACOB had a Department of Defense remote portal with access to a DGS server. JACOB's email is NOMADIC1@HUSHMAIL.COM.

The Russian EVGANEY wanted him to move to a third world country and contact him. That is the reason DEHART moved to Canada. He contacted EVGANEY, who set up a Russian contact for him in Canada. He was told he would be paid approximately $100,000 per month if the intelligence he gave was good. DEHART was to send secure data archive information to EVGANEY at the following email address: MDSICHERHEIT@GMAIL.COM

DEHART felt like he established a relationship with the Russian. He was supposed to meet his new contact in the Russian Embassy in Ottawa on Saturday, August 21, and they would give him a list of what they needed.

JACOB DIEL knows how to access 256 and 512 bit drone feeds at the base. He lives in Terra Haute, IN, and likely uses library computers. DEHART offered to make the contact to sell the secrets and JACOB DIEL was going to get the information. DEHART would give it to the Russians. DEHART is willing to work against JACOB DIEL and the Russians. DEHART also believes an officer is involved with access to DGS. DIEL also has old repair manuals from the old F-16 fighter wing in Terra Haute. JACOB DIEL had many friends holding items in a storage facility. DEHART believes BRENT COOPER and DANIEL (Last Name Unknown) as well as JACOB DIEL and his brother are all involved in trying to sell U.S. Military Intelligence to foreign governments.

FD-302a (Rev. 10-6-95)

65U-WF-241612

Continuation of FD-302 of ___MATTHEW PAUL DEHART___ , On _08/06/2010_ , Page __5__

DANIEL's email is GENTRY06@aol.com.

At approximately 7:30 p.m. DEHART was booked at the Penobscot County Jail, Bangor, Maine.



| ID | Location | | | Date | Description |
|---|---|---|---|---|---|
| 1B1 E4612373 | WF ECR1 | CART 22 | SC | C 08/12/2010 | CART EXAM<br>DEMF1-SAMSUNG SPHM530 CELLPHONE ANALYSIS-VIRGIN MOBILE CANADA-PHONE NUMBER: 902-388-9153, IMEI:268435459005242349 |
| 1B2 4434977 | ME ECRNV-C | BIN12 | SB | C 03/22/2011 | DET. RANDY M. CURRIE, CHARLOTTETOWN P.S., 10 KIRKWOOD KINGSTON TECHNOLOGY 120GB HARD DRIVE (SEALED BY CHARLOTTETOWN P.S., CONTROL NO. 2678099) |
| 1B3 4434978 | ME ECRNV-C | BIN12 | SB | C 03/22/2011 | DET. RANDY M. CURRIE, CHARLOTTETOWN P.S., 10 KIRKWOOD TOSHIBA LAPTOP 320GB DISK DRIVE (S/N Z99BC6YCT) (SEALED BY CHARLOTTETOWN P.S., CONTROL NO. 2678100 |
| 1B4 4434979 | ME ECRNV-C | BIN12 | SB | C 03/22/2011 | DET. RANDY M. CURRIE, CHARLOTTETOWN P.S., 10 KIRKWOOD WESTERN DIGITAL (HD) SCORPIO BLUE 160GB HARD DRIVE (S/N WXE90BJX4955) (SEALED BY CHARLOTTETOWN P.S., CONTROL NO. 2677101 |
| 1B5 4434980 | ME ECRNV-C | BIN12 | SB | C 03/22/2011 | DET. RANDY M. CURRIE, CHARLOTTETOWN P.S., 10 KIRKWOOD SEAGATE BARRACUDA 7200.11 1500GB HARD DRIVE (S/N 9VS3BGVK) (SEALED BY CHARLOTTETOWN P.S., CONTROL NO. 1052268). |
| 1B6 4434982 | WF ECR1 | CABQ | D1 | G 03/22/2011 | DET. RANDY M CURRIE, CHARLOTTETOWN P.S., 10 KIRKWOOD LANGUAGE EDUCATION BINDERS, CLASS NOTEBOOK, TUITION DOCUMENTS, RECEIPTS, MAGAZINES, PERSONAL GREETING CARDS, AND VARIOUS HANDWRITTEN NOTES |
| 1B7 4708333 | WF ECR1 | CABX | D2 | G 08/06/2010 | HOMELAND SECURITY U.S. IMMIGRATION<br>1) ARMED FORCES OF THE UNITED STATES GENEVA CONVENTION IDENTIFICATION CARD FOR MATTHEW DEHART |
| 1B8 4708334 | WF ECR1 | CABX | D2 | G 08/06/2010 | HOMELAND SECURITY U.S. IMMIGRATION<br>1) U.S.PASSPORT # 467597808 |
| 1B9 4708348 | WF ECR1 | U16 | SA | G 08/06/2010 | MATTHEW DEHART<br>1) KNAPSACK CONTAINING MISC PERSONAL ITEMS : 2) 1 BLUE SHIRT 3) 1 BLACK SHIRT, 4) STEEL SERIES HEADPHONES, 5) SUNGLASSES, 6) BLUE JEANS, 7) 2 BOOKS, 8) BELL WATER BOTTLE, 9) BLACK PASSPORT HOLDER, 10) GREEN UNDERWEAR & WHITE SOCKS, 11) DEODORANT, 12) SHAVE GEL, 13) NEUTROGENA, 14) TOOTHPASTE, 15) CONTACT LENS CASE, 16) 4 TRAVEL DOCUMENTS, 17) ONE RED DOCUMENT HOLDER, 18) 3 KEYS ON OTTAWA SENATORS KEYCHAIN, 19) 1 20 GB IPOD |
| 1B10 4814491 | WF ECR1 | CART 22 | SJ | C 04/05/2011 | CART EXAM<br>(1)SEAGATE 750GB HD, SN 5QD5HVC0 CONTAINING ARCHIVE OF QWF1, QWF2 & QWF3<br>(1)HITACHI 2TB HD, SN YAHTBVLP CONTAINING ARCHIVE OF QWF4 |

Handwritten annotation between rows 1B5 and 1B6: "ITEMS WE HAVE HERE NOW" (with bracket pointing to items)

FD-395 (Rev. 2-28-97)

*MD*

# ADVICE OF RIGHTS

Place  DoVER, NH
*MD*  Date  8-19-10
Time  10:45

## YOUR RIGHTS

*MD* Before we ask you any questions, you must understand your rights.

*MD* You have the right to remain silent.

*MD* Anything you say can be used against you in court.

*MD* You have the right to talk to a lawyer for advice before we ask you any questions.

*MD* You have the right to have a lawyer with you during questioning.

*MD* If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

*MD* If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

## WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present.

Signed  *[signature]*

Witness:  *[signature]*

Witness:  *[signature]*

Time:  10:49a

*MD*

D-472 (9-25-74)

*MD*

8-19-10
(Date)

DOVER NH or ANY ~~OTHER~~ *MD* OTHER LOCATION
(Location)                    FROM THIS DATE
                              FORWARD

I, MATTHEW DEHART
(Name)

10270 BOURBON ST NEWBURGH IN, hereby
(Address)

authorize ANY FBI AGENT and

ANY CANADIAN LAW ENFORCEMENT, Special Agents of the

Federal Bureau of Investigation, United States Department of Justice, to install a

recording device on a telephone located at ANYWHERE
(Location)

for the purpose of recording any conversation I may have on that telephone with

ALLEN JAYCOB ~~DEPEHL~~ DEAL *MD*; BRENT COOPER on or about 8-19-10 FORWARD /ANY FUTURE DATE
DAN TAYLOR, ~~DEAHL~~'S "BROTHER" DEAL *MD*
(Name of Subject(s))                    (Date)

I have given this written permission to the above-named Special

Agents voluntarily, and without threats or promises of any kind.

(Signature)

Witnesses:

08/19/2010

08/19/2010

STATEMENT MADE VOLUNTARILY — *MD*

Case 3:10-cr-00250  Document 123-2  Filed 09/07/12  Page 11 of 15 PageID #: 695

FBI/DOJ

*MD*

# CONSENT TO ASSUME ONLINE IDENITY

## ADULT CONSENT

I, __MATTHEW DEHART__, hereby voluntarily provide consent to Postal Inspectors or other Federal, State or Local Task Force officers to assume my Internet online identity. My Internet screen name(s), nick name(s), and/or e-mail addresses are as follows: __KMFDMK@AIM.COM__ *MD* __MDSICHERHEIT@GMAIL.COM__ *MD* __ERLOESUNG@GMAIL.COM__ *MD*

The password(s) is/are as follows: __14elmira905 MD__

I understand that these law enforcement officers will changes the password(s) to this account so that I will no longer have access to these accounts. My Internet online identity may be used by these law enforcement officers for any official purpose relating to an official investigation, including sending and receiving e-mail making direct communications on systems such as ICQ or AOL instant messaging, and any other electronic communications. I have been advised of my right to refuse to allow the assumption of my identity. I give this consent freely and voluntarily.

Signature _[signature]_

Date __8-19-10__

Witness _[signature]_  08/19/2010

_[signature]_  08/19/2010

STATEMENT MADE VOLUNTARILY — *MD*

*MD*



# CONSENT TO ASSUME ONLINE IDENITY

## ADULT CONSENT

I, __MATTHEW DEHART__, hereby voluntarily provide consent to Postal Inspectors or other Federal, State or Local Task Force officers to assume my Internet online identity. My Internet screen name(s), nick name(s), and/or e-mail addresses are as follows: __"_____"@hushmail.com - ANY @HUSHMAIL.COM ACCOUNT MD__

The password(s) is/are as follows: __UNKNOWN - MD TO BE TEXTED TO MY CANADIAN VIRGIN MOBILE ACCOUNT. MD__

I understand that these law enforcement officers will changes the password(s) to this account so that I will no longer have access to these accounts. My Internet online identity may be used by these law enforcement officers for any official purpose relating to an official investigation, including sending and receiving e-mail making direct communications on systems such as ICQ or AOL instant messaging, and any other electronic communications. I have been advised of my right to refuse to allow the assumption of my identity. I give this consent freely and voluntarily.

Signature _[signature]_

Date __8-19-10__

Witness 1) _[signature]_ 08/19/2010

2) _[signature]_ 08/19/2010

STATEMENT MADE VOLUNTARILY - MD

FD-26 (Rev. 7-20-94)

*MD*

# DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION

## CONSENT TO SEARCH

1. I have been asked by Special Agents of the Federal Bureau of Investigation to permit a complete search of:

   (Describe the person(s), place(s), or thing(s) to be searched.)

   EMAIL ACCOUNT: MDSICHERHEIT@GMAIL.COM    M.D.
   ↑ ~~[redacted]~~ Helmira 905        & Everything

   ~~[struck out]~~ I allow you to Search ALL CONTENT OF SAID EMAIL ACCOUNT.  MD
   (US GOVERNMENT/F.B.I.)  MD

   EMAIL ACCOUNT: ERLOESUNG@GMAIL.COM   MD
   PW: Saved on Acer   MD

   I allow you to SEARCH FOR ANYTHING RELATED TO THE NATIONAL SECURITY MATTER
   I DO NOT CONSENT TO ANY SEARCH RELATED TO VZW.COM or VZWPIX.COM or VERIZONWIRELESS

2. I have been advised of my right to refuse consent. *MD*
3. I give this permission voluntarily. *MD*            *MD*
4. I authorize these agents to take any items which they determine may be related to their investigation. *MD*

   08/19/2016                    [signature]
   Date                          Signature

             Witness             [signature]

           — STATEMENT MADE VOLUNTARILY
                                  *MD*

Case 3:10-cr-00250  Document 123-2  Filed 09/07/12  Page 14 of 15 PageID #: 698    *MD*

FD-26 (Rev. 7-20-94)

*MD*

DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF INVESTIGATION

## CONSENT TO SEARCH

1. I have been asked by Special Agents of the Federal Bureau of Investigation to permit a complete search of:

   (Describe the person(s), place(s), or thing(s) to be searched.)

   White ACER LAPTOP COMPUTER LOCATED @ 37 KENSINGTON CT. APT-13 CHARLOTTETOWN P.E.I in the RCA MICROWAVE ON TOP OF THE TOSHIBA LAPTOP. *MD* (FBI or CANADIAN LAW ENFORCEMENT) *MD*

   I DO NOT CONSENT TO SEARCH/SEIZURE OF THE OTHER 2 COMPUTERS PRESENT *MD*

2. I have been advised of my right to refuse consent. *MD*
3. I give this permission voluntarily. *MD*
4. I authorize these agents to take any items which they determine may be related to their investigation. *MD*

08/19/2010
Date                          Signature

Witness

— STATEMENT MADE VOLUNTARILY *MD*

Case 3:10-cr-00250  Document 123-2  Filed 09/07/12  Page 15 of 15 PageID #: 699