```
 1                    UNITED STATES DISTRICT COURT
                   FOR THE MIDDLE DISTRICT OF TENNESSEE
 2                         NASHVILLE DIVISION

 3   _____

 4   UNITED STATES OF AMERICA          )
                                       )
 5   vs.                               )  CASE NO. 3:10-00250
                                       )
 6   MATTHEW PAUL DEHART               )

 7   _____

 8
                         TRANSCRIPT OF PROCEEDINGS
 9

10   _____

11   BEFORE:               THE HONORABLE ALETA A. TRAUGER

12   DATE:                 APRIL 12, 2012

13   TIME:                 1:30 P.M.

14   _____

15   APPEARANCES:

16   FOR THE GOVERNMENT:   CARRIE DAUGHTREY
                           U.S. Attorney's Office
17                         Nashville, Tennessee

18   FOR THE DEFENDANT:    MARK SCRUGGS
                           Nashville, Tennessee
19

     _____
20

21   REPORTED BY:          BEVERLY E. "BECKY" COLE, RPR
                           OFFICIAL COURT REPORTER
22                         A-837 U.S. COURTHOUSE
                           NASHVILLE, TN  37203
23                         (615) 830-3386

24

25
```

1    THE COURT:  Good afternoon.  We're here on United

2    States versus Matthew Paul Dehart.  We have Carrie Daughtrey

3    for the government and Mark Scruggs for the defendant.  The

4    defendant is in the courtroom.

5        We're here on the defendant's motion to compel.  The

6    government filed a lengthy response which I presume you

7    received?

8        MR. SCRUGGS:  Yes, Your Honor.  I received it

9    last night at 8:00 p.m.

10       THE COURT:  Okay.  Well, you got it before I did.

11   I was able to digest it.  I hope you were able to digest it.

12       MR. SCRUGGS:  It was difficult, but we survived.

13       THE COURT:  All right.  What are the lingering

14   issues?

15       It sounds to me like most of this you should have been

16   able to work out if you were being reasonable with each

17   other, so let me hear what your continuing complaints are.

18       MR. SCRUGGS:  Your Honor, just first as a

19   preliminary matter, I would move to strike the government's

20   response as being untimely.

21       Part of the problem here has been the government's

22   failure to respond to requests with regard to discovery, and

23   I would submit that waiting to 12 hours before we have the

24   hearing basically denies my client due process.

25       I'm not asking for a continuance.  I just would submit

1    that's not the professional way of handling things.

2         THE COURT:  I'll let Ms. Daughtrey make a

3    statement as to why she didn't respond in a timely manner to

4    the original motion to compel which was filed on March 14.

5    That's not contained in her response.

6         She did timely respond to your motion for hearing

7    which basically is a response to the motion to compel.  I'm

8    not going to strike her response, but I will let her put her

9    excuse on the record.

10        So moving on to the merits, tell me what it is you do

11   not have that you still need.

12        MR. SCRUGGS:  Judge, the first thing that we're

13   asking for are all items or copies of all items that were

14   seized from my client's home in Indiana in January of 2010

15   as well as all items that were taken from his person when he

16   was arrested on August 6, 2010, and all items taken from his

17   apartment in Canada.

18        We would like to have access to those items and copies

19   of any electronic media with regard to all those items

20   pursuant to Rule 16(a)(1)(E) of the Federal Rules of

21   Criminal Procedure.

22        THE COURT:  Well, first of all, let me ask you

23   this.  Why have you not arranged to get the hard drive that

24   Ms. Hodde had requested and apparently has been ready for

25   quite some time?

1          MR. SCRUGGS:  Judge, one of the hard drives, from

2    what I understand, is ready to be -- from what I understand,

3    to be examined there at the government offices.  All right?

4          When I got into this case in late January, at that

5    point in time prior counsel had hired an expert from -- I'm

6    not exactly sure where he lives, but I believe he's mainly

7    based out of New York, and my ability to communicate with

8    him left a lot to be desired.

9          I immediately hired Mr. Jim Kempvanee, who's here.  He

10   has testified in courts here in the Middle District before

11   as well as other courts.

12         I'm prepared to qualify him as an expert.  I have his

13   CV with me, and he'll testify here today on why he needs

14   what he needs.

15         But the bottom line, Judge, is that going to the

16   government's office simply to view and make his analysis is

17   not sufficient for Mr. Kempvanee to do the type of job he

18   needs to do.

19         What we have proposed is that we would cooperate with

20   the government in deleting or writing over any child

21   pornography images.

22         Mr. Kempvanee has done this in other cases.  I have a

23   copy of an order -- if I may, Judge, if I could approach?

24              THE COURT:  Okay.

25              MR. SCRUGGS:  I have provided a copy to counsel.

1    Magistrate Bryant has allowed this in other case very

2    similar.  Mr. Kempvanee is prepared to testify on why it is

3    necessary for him to obtain a redacted copy of -- actually,

4    there's only one hard drive, Judge, that is alleged to have

5    child pornography on it.

6    There are numerous other electronic media for which

7    there's no claim there's child pornography on it, so there

8    shouldn't be a problem with us getting a copy of all those

9    items, but Mr. Kempvanee, when I hired him, indicated to me

10   that he needs to have a copy of all the electronic media as

11   well as a redacted copy of the one hard drive allegedly

12   having child pornography on it, and take it to his office so

13   that he can use his software and his equipment in order to

14   properly analyze this and do his job for us.

15       THE COURT:  How does it help him analyze child

16   pornography if the child pornography has been removed from

17   the computer?

18       MR. SCRUGGS:  Judge, he is not being hired to

19   determine whether something is child pornography or not.

20   Judge, this case is not about child pornography.  This

21   is about how certain images got onto my client's hard drive.

22   And it's our position that the alleged victim in this

23   case placed these images on his hard drive as a result of

24   their relationship in another matter, of which they were --

25   they shared.

1    And, basically, if the court would allow me, I'll give
2  you sort of a synopsis of what this is, in fact, about.
3    Judge, my client was arrested at the border on
4  August 16, 2010.  The purpose of the arrest had nothing to
5  do with child pornography.
6    The purpose of the arrest had to do with his alleged
7  involvement in WikiLeaks.  Ms. Daughtrey has --
8    THE COURT:  That's the national security --
9    MR. SCRUGGS:  That's the national security.  She
10 alluded to that, but the bottom line, that's what it is
11 about.
12   THE COURT:  Okay.
13   MR. SCRUGGS:  During that entire weekend, Judge,
14 he was interrogated by FBI agents with regard to his alleged
15 connection with WikiLeaks as well as Mr. Tamberello's
16 (phonetic) alleged connection with WikiLeaks, and so forth.
17   The child pornography is just a red herring in this
18 case but the reason why this man has been held for
19 approximately 20 months at this time.
20   During the time period between August 6 and August 18,
21 he was interrogated numerous times by FBI agents.  He was
22 drugged.  And he has little, if any, recollection with
23 regard to what he stated during that time period.
24   THE COURT:  But this was all in connection with
25 the other investigation?

1          MR. SCRUGGS:  Right.

2          THE COURT:  And Ms. Daughtrey asserts she doesn't

3   have those statements anyway.

4          MR. SCRUGGS:  It is imperative that we be able to

5   get to those statements because we believe that during that

6   interrogation, part of what he did was give them access to

7   certain passwords that allowed them to get into different

8   media that he has that will have exculpatory material on it.

9      And that type of material --

10         THE COURT:  Doesn't he have the words that you

11  need in order to find out --

12         MR. SCRUGGS:  Judge, the items -- you may have

13  noticed, Judge, that the -- that Ms. Daughtrey filed as an

14  attachment to her response some consent forms --

15         THE COURT:  Right.

16         MR. SCRUGGS:  -- that were signed -- allegedly

17  signed by my client August 18, 2010, in New Hampshire.  All

18  right?

19     You'll see that on those consent forms, he's given

20  certain passwords.

21     And when we talk about passwords, we're talking about

22  passwords that could be anywhere from 25 to 100 characters

23  in length, very complicated passwords.

24     The passwords that we have are passwords to either

25  e-mail or computers that would have exculpatory material on

1  that.

2          THE COURT:  You are saying the passwords on these

3  consent forms?

4          MR. SCRUGGS:  There are additional passwords as

5  well, Judge.

6          THE COURT:  Well, does your client not know his

7  own passwords, Mr. Scruggs?

8          MR. SCRUGGS:  Not all of them, Judge, because

9  they have so many characters.  And some of the items and

10  which have been seized would contain those passwords for our

11  computer analyst to access certain devices in order to find

12  exculpatory material.

13          THE COURT:  Where were they seized?  Were they in

14  his wallet, what?

15          MR. SCRUGGS:  Judge, I have a list, if I could?

16          THE COURT:  Yes.  Let me ask you quickly, who is

17  the prosecutor in this Jeremy Tummons (phonetic) case?

18          MS. DAUGHREY:  Your Honor, that was Matt Everitt

19  that handled that, and I do know some bits and pieces, and

20  it is extremely different from this particular case, and I

21  will address that with the court.

22          THE COURT:  Very good.  Let's see.  Return on

23  search warrant.  This was the search done where?

24          MR. SCRUGGS:  January 2010, at the defendant's

25  residence in Indiana.

1                    THE COURT:  Okay.

2                    MR. SCRUGGS:  We need to have a copy of all of

3      the media as well as the return of any other items on that

4      list.

5                    THE COURT:  Property seized from P-E-I apartment,

6      unknown dates.

7                    MR. SCRUGGS:  And from what I understand, the

8      only item on there that contains -- allegedly contains child

9      pornography is the hard drive related to a Gateway laptop.

10     That's what I understand.

11         So there shouldn't be any problems with giving us

12     copies of all those items except for that.  We'll get to the

13     redaction issue in just a second.

14                    THE COURT:  Okay.

15                    MR. SCRUGGS:  Now, with regard to the other

16     handwritten list that you have, you'll see in front of you,

17     you have a list of items that were taken from my client when

18     he was arrested in Maine as well as items that he had stored

19     at his apartment in Canada.

20         Judge, we have asked for any documentation related to

21     his arrest and seizure of all those items either at the time

22     of his arrest or in his apartment in Canada, have not been

23     provided with anything.  And this is all supposedly related

24     to national security, is what it is.

25                    Well, the bottom line is -- Judge, is that we need to

1  have access to those items in order to show -- and I guess I

2  have to basically just tell you our defense here, Judge, in

3  order to make sure that you understand this is relevant, all

4  right, didn't really want to have to do that, but the bottom

5  line, Judge, is that this case also involves some very

6  sophisticated persons who are involved in computers.

7       And it involves hacking.  And it involves being able

8  to show that, for example, the government alleges that my

9  client impersonated some woman in trying to get

10 Mr. Tamberello to send pornographic pictures of himself to

11 my client.

12      Judge, we firmly believe that we'll be able to show

13 that this woman does, in fact, exist, all right, and that

14 there will be evidence of that if we're allowed to have

15 access to these things.

16           THE COURT:  Well, the existence of the woman does

17 not belie the defendant pretending to be an existing woman.

18           MR. SCRUGGS:  I understand, Judge, but if we show

19 that she existed and that she had an e-mail, then I think

20 the jury would be able to make a pretty good inference that

21 she's the one who actually communicated with Mr. Tamberello

22 and was able to get him to send these things to the image

23 board that my client was a monitor of basically.

24      So you have to understand that my client was basically

25 a monitor for a group called "4-chan".  He operated or

monitored, I should say, an image board upon which persons
could upload images, pictures, whatever.

Mr. Tamberello was one of them who did that.

THE COURT:  What's the name of the group?

MR. SCRUGGS:  4-chan, number 4, hyphen, C-H-A-N.
That's what he did.

Tamberello was one of the persons that participated in
that.  He also was one of the persons that participated in
this computer game that they all participated in, this
"World of Warcraft".  All right?

So Tamberello was the one who did -- on his own
communicated with this woman and also on his own uploaded
these things to this image board site that would be found on
my client's computer.

My client, you could think of him sort of as a
policeman who when persons uploaded improper items onto the
image board would delete it, all right?

So that's why we need our -- I'm basically telling
them our whole case here -- but that's why we need to have
our expert go in and break this apart to show that that is,
in fact, what it was.

The other part of this too is that the government on
Mr. Tamberello's phone apparently had an image of a female,
pornographic image of a female, that was apparently deleted,
who very well could have been the person that he had been

1    communicating with, with regard to the pornographic images

2    to begin with.

3         I mean, the total lack or the total reluctance of the

4    government to provide evidence in this case that we're

5    entitled to under Rule 16 is overwhelming, and, frankly, I

6    would ask the case be dismissed just for that.

7         But the point is, Judge --

8         THE COURT:  Well, if there is evidence that you

9    need -- that I determine that you need for your defense that

10   the government is unwilling to give you because of national

11   security, the case will be dismissed.

12        Go ahead.

13        MR. SCRUGGS:  Again, that's how all the items on

14   the list -- again, that's from my client's best recollection

15   of what was taken from him both when he was arrested up in

16   Maine as well as his apartment in Canada; those items have

17   information that ties into our defense related to what they

18   found on his Gateway laptop in Indiana.

19        And all that ties into Mr. Tamberello and the

20   relationship that he had with 4-chan and the image board

21   basically.

22        So that is pretty much our defense in a nutshell.

23   Again, I have got my -- my client will testify regarding

24   what happened to him the first week or ten days.

25        And you know something that's really interesting here

```
 1    is this, and that is that he was held -- let's see -- he was
 2    arrested on August 6.  He had his first hearing, the
 3    detention hearing, in Maine on August 11.
 4         When he was arrested on August 6, he asked for an
 5    attorney.  He was continuously interrogated by an FBI agent.
 6    I have a copy of his card that I'm going to submit.
 7              THE COURT:  His card?
 8              MR. SCRUGGS:  His card.  Yes, the FBI agent's
 9    card who interrogated him.
10              THE COURT:  Oh.
11              MR. SCRUGGS:  Okay?
12         We know -- I mean, at that point in time, my client --
13    his father had hired a lawyer for him out of Indiana to
14    represent him on this because of what had happened back in
15    January.
16         We know that he had the detention hearing in Maine on
17    August 11, and he was appointed a public defender at that
18    point in time.
19         So if you will look at that attachment that they
20    attached that has all the consent forms on it, that's
21    August 18th in New Hampshire, there's no mention of waiver
22    of any lawyer or the fact that he had a lawyer.  My client
23    doesn't even remember any of this.
24         But clearly what it is, it's an effort by the
25    government to circumvent my client's rights.  And that leads
```

me up to the other thing that I need to -- as far as part of my defense. And that is that I have got to file a motion to suppress everything that they've discovered from the Gateway laptop in Indiana because it is our position they did not get into that Gateway laptop until after his arrest and interrogations.

You know, Agent Kniss is here. Agent Kniss did the analysis, but Agent Kniss was already supplied with a rebuilt image of that hard drive; that is, the Gateway laptop.

THE COURT: What do you mean a rebuilt image, a mirror image?

MR. SCRUGGS: Yes.

THE COURT: That's not rebuilt image, as I understand it.

MR. SCRUGGS: This is the way it's been explained to me.

You can image a hard drive, all right? But you can't get into it unless you have passwords, and that's what my expert will testify to, from what I understand.

This FBI Agent Hill is the person -- I think this guy was with the task force working with FBI, he's out of Indiana, he's the person who actually rebuilt it and got into it.

And we haven't been provided with no documentation

1    regarding the chain of custody of this hard drive or

2    anything about what Agent Hill did.

3        It is critical to know that date upon which he

4    actually got into the hard drive.

5            THE COURT:  Who is Agent Hill?  I thought that

6    the forensic report here was prepared by Mr. Kniss?

7            MR. SCRUGGS:  Agent Kniss did the analysis.  When

8    Kniss received the hard drive, somebody had already gotten

9    into it.  That is, Agent Hill, the agent in the task force

10   in Indiana is the person who actually did the mirror image

11   as well as rebuilding it so that you can get into it.

12       Again, my expert can explain that process on how it's

13   done.

14       Never have we been provided with any information with

15   regard to what Agent Hill did and how he went about doing it

16   or the chain of custody or anything like that.

17       So that gets back to the motion to suppress.  That

18   gets back to all these things that I got to get done before

19   May 29.

20           THE COURT:  Good luck.

21           MR. SCRUGGS:  I mean, this is the boat that I'm

22   in here, the pickle that I'm in.

23       You know, I'm trying to move this case along.  I got

24   into this the end of January.  You can imagine how difficult

25   this is in terms of understanding it, to begin with, but as

1 far as getting these things are concerned, it is critical

2 that my expert assist me in presenting this.

3     And number one is breaking down, analyzing, and assist

4 me in presenting it to the jury and assist me in helping

5 with the motion to suppress as well.

6         THE COURT:  When did you inform the government

7 that you had a different expert from the one that Ms. Hodde

8 had been working with for quite some time?

9         MR. SCRUGGS:  Probably today.

10         THE COURT:  Well, that's not very helpful.  She

11 apparently has been waiting to get the name of an agent in

12 New York that they could furnish this material to so that

13 the expert up in New York could supervise the review of it

14 up there.

15     So I think for you to place all of the blame for delay

16 on Ms. Daughtrey is a little bit misplaced.

17         MR. SCRUGGS:  Judge, if you would, Ms. Hodde sent

18 her a letter July 25, 2011, that's attached to one of

19 motions, document number 70.  The response didn't happen

20 until November 22, 2011.

21     From what I've been told -- I wasn't here, but from

22 what I've been told, y'all had a hearing sometime in

23 October.

24     At that point in time, from what I'm understanding,

25 Ms. Daughtrey represented to the court that Indiana was

1   going to take this case over.

2        I don't know.  I mean, she can respond to that, but

3   apparently Indiana hasn't taken anything over.

4        We're here about all these other things related to

5   national security, and you know what?  My client sits in

6   jail.

7        As far as -- let me just say this.  With regard to

8   Mr. Kempvanee is concerned, I don't know what difference it

9   makes whether I would have told her or not because the point

10  was we were going to have to file a motion to get her to let

11  us have copies of everything, including a redacted copy.

12       It wouldn't have made any difference if I told her a

13  month ago or not.  Mr. Lane was hard to get ahold of.  He

14  lives in New York and travels the world, so Mr. Lane just

15  wasn't going to work.

16       He wasn't going to be in a position to help this young

17  man out whose been held for -- like I said, for 20 months

18  now waiting, you know, for his day in court.

19       We're prepared at this point in time to present

20  witnesses to back up everything I have just said.

21            THE COURT:  Okay.  Thank you, Mr. Scruggs.  Let

22  me hear from Ms. Daughtrey.

23       I guess my first question, Ms. Daughtrey, is that you

24  told me in October that if the charges were subsumed in

25  Indiana this case would be dismissed, and you told me in

1   November that there was probably going to be an Indiana

2   indictment by the end of November.

3        And then you told me in December that there would be

4   charges in Indiana and Maryland.

5        And it was my understanding that then this case would

6   be subsumed and that would be the end of it in this

7   district.  So what's going to on?

8             MS. DAUGHREY:  Your Honor, I apologize for that.

9   I got the information from an AUSA up in Indiana that they

10  were interested in the case and they were reviewing it.

11       And at some point, Indiana decided that the only thing

12  that they were willing to take was the possession and

13  receipt and distribution of child pornography out of

14  Indiana, that they wanted not to be doing the other cases

15  involving the victims.

16       I'm not entirely sure I know why that is, but I can

17  tell you there are only two AUSA's in that particular

18  office, and I think it was more of a staffing problem than

19  anything else.

20       I was very frustrated by it, but by December, I was

21  beginning to realize this, and that's why I was mentioning

22  that there was going to be an investigation going on in

23  Maryland, which I understand is still ongoing at this time.

24       So there are likely to be cases -- and Ms. Hodde was

25  aware of that -- cases that are coming out of two or

possibly three jurisdictions.

            THE COURT:  Well, what's happening in Maryland?

            MS. DAUGHREY:  My understanding is that it's under investigation at this time.

            THE COURT:  The pornography case?

            MS. DAUGHREY:  There is another victim in Maryland who is a teenage victim, minor teenage, who had the same kind of exchange with Mr. Dehart as what we see with the victim here in Tennessee.

      And as is typical with adolescent victims, he is not necessarily anxious about coming in front of the court and dealing with that.  And so I don't know what their status is with working with him and going forward with charges at that time.

      It is the government's intent at this point to be proceeding, you know, to trial with this particular case, and Ms. Hodde was aware of that.

      Unfortunately, I did not know that Mark Scruggs was going to ask to be on this case until February 7 when I received and e-mail from him, which is included in the filing that I made.  I believe that would be Attachment Number 3.

      You can see the communication we had then.  I have received one phone call from Mr. Scruggs subsequent to that basically demanding copies of everything but not being

1   willing to talk about anything.

2       He has not called me since then or had any

3   communication with me.

4       I do apologize to the court for not getting a response

5   in right away.  I will admit that when Ms. Beasley got in

6   touch with me that it had slipped my mind that I needed to

7   do that because I do have a very heavy caseload.

8       I also have some other personal matters that are going

9   on, and I apologize, I have also had a sick child all week

10  and have just come into the office to do this hearing, so --

11  could I have a moment, Your Honor?

12          (Counsel is emotional.)

13          THE COURT:  We'll take a short recess.

14          (Break.)

15          THE COURT:  Okay.  As usual, we made a lot of

16  progress in chambers sometimes we can't make in the

17  courtroom.

18      At any rate, the parties have requested some time to

19  talk amongst themselves.  Ms. Daughtrey is going to make

20  Agent Kniss available to Mr. Scruggs, and Mr. Scruggs and

21  the expert witness are going to go up to Ms. Daughtrey's

22  office with Detective Kniss and share some more information

23  about exactly what is needed here.  And then we're going to

24  reconvene after that takes place.

25          And we were talking about reconvening -- would you get

1  those two other calendars I have next week -- I actually

2  probably have a whole lot more time on Tuesday than Monday.

3          MR. SCRUGGS:  Tuesday is good too.

4          THE COURT:  Okay.  Let me get the calendar for

5  next week and maybe reconvene on Tuesday would be better.

6  That will give you another day to get ahold of all the

7  people you have to get ahold of as well, Ms. Daughtrey.

8          MR. SCRUGGS:  May I check with my expert?

9          THE COURT:  Yes.

10          (Pause.)

11          MR. SCRUGGS:  Tuesday is okay.

12          MS. DAUGHREY:  I'm available all day Tuesday as

13  well.

14          MR. SCRUGGS:  I would be available by 11:00.

15          THE COURT:  After 11:00?

16          MR. SCRUGGS:  From 11:00 on.

17          THE COURT:  Okay.  1:30 on Tuesday?

18          MR. SCRUGGS:  If the court could do it earlier

19  just in case the testimony takes longer?

20          THE COURT:  Well, I have a luncheon that day at

21  11:30 --

22          MR. SCRUGGS:  All right.  1:30 is fine.

23          THE COURT:  -- so 11:00 would not really give us

24  much time.  So 1:30 on Tuesday.

25          MS. DAUGHREY:  I can't imagine, Your Honor, it's

1   going to take more than two or three hours at the very most.

2   THE COURT:  Okay.  And we'll all be prepared to

3   stay late if we need to, Ms. Daughtrey?

4   MS. DAUGHREY:  Yes, Your Honor.

5   MR. SCRUGGS:  All right.

6   THE COURT:  Now, as I understand, Ms. Daughtrey

7   is going to -- Mr. Scruggs and perhaps Mr. Dehart's parents

8   are going to make the initial requests to retrieve the

9   Indiana material that's at the U.S. Attorney's Office in

10  Indiana, try to get that back, and Ms. Daughtrey is going to

11  give her blessing to that since apparently there's not going

12  to be any prosecution in Indiana, so she will assist with

13  that.

14  There is going to be a conference call, hopefully,

15  between the parties including Detective Kniss and the

16  defense expert with FBI Agent Hill, who apparently ran the

17  mirror images, so that everybody can figure out exactly what

18  he did and when.

19  Ms. Daughtrey is going to contact the Department of

20  Justice lawyers involved in the national security matter and

21  try to figure out how to get access to whatever statements

22  the defendant made to those agents and whatever was seized

23  from the defendant in Canada or Maine.

24  So hopefully you all can make -- and Detective Kniss

25  is going to either prepare or be prepared to testify to a

1  chronology of exactly what he got when and what he did when,

2  so forth.  That would be, I think, very helpful to people.

3       And can I hold onto these three documents that you

4  have given me?

5            MR. SCRUGGS:  Yes.  Absolutely.

6            THE COURT:  You have given me four documents.  So

7  I'll hold on to those.

8            THE CLERK:  Are you going to make those exhibits?

9            THE COURT:  I'm not going to make those exhibits

10  right now.  We may make them exhibits at the next hearing.

11            THE CLERK:  Okay.

12            THE COURT:  And I will just encourage everyone,

13  we make a whole lot more progress when we talk to each other

14  and I think that's very needed in this case.  And I hope

15  that we can make some headway with that approach, and we

16  will reassemble on Tuesday at 1:30.

17       Okay.  Good.  We're in recess.

18

19

20

21

22

23

24

25

```
 1                    REPORTER'S CERTIFICATE

 2

 3         I, BEVERLY E. "BECKY" COLE, Official Court

 4   Reporter for the United States District Court for the Middle

 5   District of Tennessee, with offices at Nashville, do hereby

 6   certify:

 7             That I reported on the stenotype shorthand machine

 8   the proceedings held in open court on April 12, 2012, in the

 9   matter of UNITED STATES OF AMERICA vs. MATTHEW PAUL DEHART,

10   Case No. 3:10-00250;

11             That a transcript of proceedings in connection

12   with the hearing was reduced to typewritten form by me;

13             That the foregoing transcript is a true and

14   accurate record of the proceedings to the best of my skills

15   and abilities;

16             This the 1st of July, 2014.

17

18

19

20                         /s/
                      BEVERLY E. COLE, RPR
21

22

23

24

25
```