Tor Ekeland
Frederic Jennings
Tor Ekeland, P.C.
195 Water Street
Brooklyn, NY 11201
Tel: 718.737.7264 ext. 700
Fax: 718.504.5417
Email: tor@torekeland.com
       fred@torekeland.com

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　Plaintiff,<br>　　v.<br>MATTHEW PAUL DEHART,<br>　　　　　Defendant. | 3:10-CR-00250<br><br>JUDGE TRAUGER |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR A BILL OF PARTICULARS**

## INTRODUCTION

Because of its lack of particularity, the November 19, 2014 Superseding Indictment ("SI") prevents Defendant Matthew Paul DeHart from ascertaining the nature of the charges, and therefore from properly defending himself against the SI. Beyond parroting the relevant statutory language for Counts One through Three, there are no specific factual allegations in the SI except for two broad date ranges (Counts One and Three), one specific date in Count Two (January 23, 2008), and a "Victim A" and "Victim B." The SI alleges no particular conduct by Mr. DeHart on the date ranges or the specific date. The government's discovery to date does nothing to ameliorate these concerns, as it is so voluminous and defective that it is impossible to use the SI as a guide as to what is relevant. As such, it increases inefficiencies and invites motion practice that ultimately may prove immaterial. As discussed below, this violates the Fifth and Sixth Amendments to the United States Constitution, Federal Rule of Criminal Procedure 7(c)(1) as codified by 18 U.S.C. § 3366, and Sixth Circuit law require a bill of particulars in this instance. Therefore, the Court should order the government to produce a Bill of Particulars. Otherwise, Mr. DeHart is unable to properly prepare his defense to avoid trial by surprise and future Double Jeopardy issues.

## STATEMENT OF FACTS

1. Around 8:00 a.m. on August 6th, 2010, at the international border crossing in Calais, Maine, Mr. DeHart crossed the border from Canada into the United States. According to an unclassified FBI report (the "FBI Report"), Mr. DeHart's border crossing set off an alert saying he "was wanted for questioning in an espionage matter." Immigration and Customs

2

Case 3:10-cr-00250   Document 246-1   Filed 06/08/15   Page 2 of 14 PageID #: 1165

Enforcement ("ICE") agents detained Mr. DeHart.[1]

2. After the ICE agents searched Mr. DeHart's person and belongings, they placed him in a detention cell.

3. Around noon the ICE Agents handed over Mr. DeHart to FBI Agents from Bangor, Maine. The FBI Agents took him to the border crossing facilities at the International Avenue border crossing in Calais, Maine.

4. The FBI Agents did not promptly take Mr. DeHart to a Federal Magistrate Judge for a detention hearing.

5. Upon arrival at the International Avenue Border Crossing he was placed in another detention cell.

6. The FBI Report states that the FBI began interrogating Mr. DeHart regarding national security matters at approximately 3:15 p.m.[2]

7. That same afternoon a Criminal Complaint and Arrest Warrant were filed in the Middle District of Tennessee, Nashville Division, alleging a single violation of 18 U.S.C. 2251(a).[3] The charge in the Complaint alleges that "on or about January 1, 2008 and on or about August 31, 2008, in Williamson County, in the Middle District of Tennessee defendant did, knowingly employed, used, persuaded, induced, enticed, and coerced a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, knowing or having reason to know that such visual depictions would be transported in interstate commerce . . . ."[4]

---

[1] *United States v. Matthew Paul DeHart*, Unclassified FBI 302 at p. 1, 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Aug. 26, 2010)(ECF #123-2).
[2] *See id*.
[3] *United States v. Matthew Paul DeHart*, Crim. Compl., No. 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Aug. 6, 2010) (ECF #1).
[4] *Id*.

3

8. The date range in the Complaint does not match the date ranges in the subsequent October 6, 2010 Indictment nor the current SI.[5]

9. The Supporting Affidavit ("the Affidavit") to the Complaint is dated August 6, 2010, the same day as Mr. DeHart's border detention, and is signed by Brett A. Kniss, Detective, Internet Crimes Against Children Task Force, Franklin Police Department.[6]

10. The Affidavit is based on an investigation begun on or about January 9, 2009, over a year and a half before the filing of the Complaint, when Detective Kniss interviewed two minors about Mr. DeHart's alleged solicitation and transmission of sexually explicit pictures to and from the minors.[7]

11. Detective Kniss's allegations are based on chat logs and email addresses that Detective Kniss alleges Mr. DeHart used to solicit sexually explicit material from the minors by pretending to be female girls in Indiana. This is despite the fact that Detective Kniss could not match Mr. DeHart's Internet Protocol Address ("IP Address") with the IP Addresses of the alleged females, because logs recording the IP Addresses for the females' chat accounts did not exist.[8]

12. Despite the seriousness of the allegations against Mr. DeHart, no arrest warrant was issued for Mr. DeHart, nor was he interviewed by anyone from law enforcement at the time.

13. On or about January 25, 2010, over a year later, the FBI Office in Evansville, Indiana, in conjunction with the Warrick County Sheriff's Office, executed an Indiana State Search Warrant on Mr. DeHart's residence in Newburgh, Indiana, ostensibly to search for child

---

[5] *United States v. Matthew Paul DeHart*, Indictment, No. 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Oct. 6, 2010) (ECF #12); *United States v. Matthew Paul DeHart*, Superseding Indictment, No. 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Nov. 19, 2014) (ECF #206).
[6] *United States v. Matthew Paul DeHart*, Aff. of Bret Kniss at p. 8, 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Aug. 6, 2010) (ECF #1).
[7] *Id*. at ¶¶ 4-5.
[8] *Id*. at ¶ 10.

pornography. The date range for the search warrant is listed as "June 2008 through January 2009," a date range different than that in the Complaint, Indictment, and SI.[9] Mr. DeHart's computers and computer related material were seized. Mr. DeHart was not arrested, as there was no arrest warrant accompanying the Search Warrant, despite the seriousness of the allegations.[10]

14. It was not until after Mr. DeHart was detained for questioning regarding espionage matters that an arrest warrant in this case was issued. The fax timestamp on the copy of the Complaint faxed from the Middle District of Tennessee to the United States District Court for the District of Maine on August 9th, 2010 reads "August 6, 2010 4:00 p.m.," roughly eight hours after Mr. DeHart was detained.[11]

15. Rather than promptly bringing Mr. DeHart before a Federal Magistrate Judge for a detention hearing based on his detention or the Criminal Complaint, at approximately 5:20 p.m. the FBI Agents advised Mr. DeHart that he was being arrested based on an Arrest Warrant from the Federal District Court for the Middle District of Tennessee, Nashville Division.[12]

16. According to the FBI Report, at approximately 6:00 p.m., two FBI Agents drove Mr. DeHart to the Penobscot County Jail, in Bangor, Maine.[13] According to the FBI Report he was booked at approximately 7:30 p.m.[14]

17. At approximately 1:00 a.m. on August 7th, 2010, hospital records show Mr. DeHart was admitted to the emergency room of the Eastern Maine Medical Center in Bangor,

---

[9] *See United States v. Matthew Paul DeHart*, Mot. to Suppress, 1 at ¶ (A), 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) May 21, 2012) (ECF #88-1).
[10] *United States v. Matthew Paul DeHart*, Affidavit of Bret Kniss at ¶ 11, 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Aug. 6, 2010) (ECF #1); s*ee also United States v. Matthew Paul DeHart,* Search Warrant, 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) May 21, 2012)(ECF #88-1).
[11] *United States v. Matthew DeHart*, Crim. Compl. 1:10-MJ-00140 (D. Me. Aug. 9, 2010).
[12] *United States v. Matthew DeHart*, Unclassified FBI 302 at p. 3, 3:10-CR-00250 (M.D. Tenn. Aug. 26, 2010) (ECF #123-2).
[13] *Id*. at pp. 4-5.
[14] *Id*. at p. 5.

Maine.[15]

18. The ER report stated that Mr. DeHart's symptoms were consistent with "possibl[y] drug-induced psychosis." The ER report also stated Mr. DeHart appeared "paranoid and delusional" because he told the physician that FBI agents were accusing him of espionage.[16]

19. At around 4:30 p.m. on August 7th, 2010 the hospital discharged him into the custody of unknown federal agents who took him back to the Penobscot County Jail where, upon information and belief, he was interrogated by FBI agents over the weekend.[17]

20. Upon information and belief, Mr. DeHart repeatedly asked for access to legal counsel throughout the foregoing and was repeatedly denied.

21. On Monday, August 9, 2010, at approximately 2:00 p.m., Mr. DeHart finally had his initial appearance in front of Federal Magistrate Judge Margaret J. Kravchuk of the Federal District Court for the District of Maine, and she appointed him a Federal Defender.[18]

22. Upon information and belief, on Monday, August 9, 2010 two Special Agents arrived from the FBI Counterintelligence Office in Washington, D.C.. The FBI continued interrogating Mr. DeHart without counsel present, despite repeated requests for counsel, between August 9-11, 2010.

23. On Wednesday, August 11, 2010, at approximately 3:00 p.m., Mr. DeHart appeared in front of Magistrate Judge Kravchuk for a detention hearing on the Criminal Complaint. Judge Kravchuk ordered him detained and committed to the Middle District of Tennessee, Nashville Division, where the Criminal Complaint was pending. At the close of the

---

[15] *United States v. Matthew Paul DeHart*, Mem. in Supp. of Mot. to Dismiss, Exs. 1-2, No. 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Nov. 19, 2014) (ECF #123-1).
[16] *Id*.
[17] *Id*.
[18] *United States v. Matthew DeHart*, 1:10-MJ-00140-MJK-1 (D. Me. Aug. 9, 2010) (ECF #6).

hearing, according to a local newspaper report, Mr. DeHart collapsed on the courtroom floor.[19]

24. Upon information and belief, over the next nine days, from August 11th to the 20th, 2010, the FBI repeatedly interrogated Mr. DeHart.

25. On or about August 19th, 2010, the FBI took Mr. DeHart to a detention facility in New Hampshire. Without his assigned Federal Defender or other counsel present, the FBI induced Mr. DeHart to sign waivers to his right to counsel and to his Miranda rights, and to sign consent forms allowing the FBI to assume, manipulate, and alter Mr. DeHart's Internet accounts including his social online media accounts and email accounts material to this case.[20] Some of the accounts appear to have been deleted after these consent forms were signed.

26. After August 20th, 2010, Mr. DeHart was transferred to a jail in Kentucky to await arraignment and trial on the charges against him in the Middle District of Tennessee, Nashville Division.

27. On October 6, 2010, a Grand Jury returned a two count Indictment against Mr. DeHart for production and transportation of Child Pornography. Outside of parroting the language of the relevant statutes it merely alleges a date range of May 2008 to December 2008 for the production charge and a date of January 23, 2008 for the transportation charge. The Indictment charges no particular conduct by Mr. DeHart to support these charges.[21]

28. On November 19, 2014, a Grand Jury returned the current four count SI.[22]

29. Count One of the SI charges the same as Count One of the Indictment, with the

---

[19] Judy Harrison, *Child porn suspect collapses in court*, Bangor Daily News, Aug. 11, 2010 at
https://www.bangordailynews.com/2010/08/11/news/bangor/child-porn-suspect-collapses-in-court/
[20] *United States v. Matthew Paul DeHart*, Mem. in Supp. of Mot. to Dismiss, Exs. 1-2, 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Nov. 19, 2014) (ECF #123-1).
[21] *United States v. Matthew Paul DeHart*, Indictment, 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Oct. 6, 2010) (ECF #12).
[22] *United States v. Matthew Paul DeHart*, Superseding Indictment, 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Nov. 19, 2014) (ECF #206).

7

same May 2008 to December 2008 date range, and adds the allegation that it involves a minor "known to the Grand Jury as Victim A." Otherwise it parrots the language of 18 U.S.C. 2251(a) and 2251(d) and alleges no particular dates, times, or conduct by Mr. DeHart.[23]

30. Count Two of the SI is exactly the same as Count Two of the Indictment. Again, it alleges no particular conduct by Mr. DeHart beyond parroting the statutory language of 18 U.S.C. 2252A(a)(1) and 2252A(b)(1).

31. Count Three adds a new production charge that is exactly the same as Count One of the SI but with a date range of December 2007 and May 2008 and an allegation of solicitation of a minor "known to the Grand Jury as Victim B". Otherwise it parrots the language of 18 U.S.C. 2251(a) and 2251(d) and alleges no particular dates, times, or conduct by Mr. DeHart.[24]

32. Count Four alleges Mr. DeHart failed to appear for an April 4, 2013 Status Conference and Detention Review before this Honorable Court, in violation of 18 U.S.C. 3146(a)(1) and 3146(b)(1). The Defense is not asking for a Bill of Particulars on this Count.

33. Mr. DeHart faces a statutory maximum of ninety years in jail.[25]

## ARGUMENT

34. The SI is so factually threadbare that the Constitution, the Federal Rules of Criminal Procedure, and Sixth Circuit law require that the government provide a Bill of Particulars. The purpose of a bill of particulars is to inform the defendant of the nature of the charges against him with sufficient precision that he can prepare for trial, avoid or minimize the danger of surprise at trial, and to enable him "to plead his acquittal or conviction in bar of

---

[23] *Id.*
[24] *Id*
[25] *Id.*

8

another prosecution for the same offense when the indictment itself is too vague, and indefinite for such purposes."[26] The Constitution dictates these requirements.

35. The Fifth Amendment's Due Process Clause and Double Jeopardy Clauses, and the Sixth Amendment's Notice Clause, require Bills of Particulars where an indictment is so threadbare that it puts the defendant at risk of unfair surprise at trial or at risk of future Double Jeopardy.[27]

36. As the Sixth Amendment states, not only must a defendant be informed of the nature of the charges against her, she must be informed of the cause. The Constitution requires a Bill of Particulars in the present instance because although Mr. DeHart has been informed of the statutory nature of the charges against him, he has not been informed as to the cause of their invocation because no particular conduct by Mr. DeHart is alleged in the SI. Simply reciting the broad language of the statute, while it may be sufficient to withstand a motion to dismiss, is not enough to defeat a motion for a Bill of Particulars. An indictment may be sufficient yet still the Constitution may require a bill of particulars.[28]

37. This constitutional requirement has been codified in Federal Rule of Criminal Procedure 7(c)(1).[29] Its application is left to the Court's discretion after consideration of a variety of factors.[30] If there is doubt, the Court should grant a Bill of Particulars.[31]

38. A court should grant a bill of particulars where the indictment is "so vague that

---

[26] *United States v. Birmley*, 529 F.2d 103, 108 (6th Cir. 1976); *see also Russell v. United States*, 369 U.S. 749, 768 (1962).
[27] *See* U.S. Const,. amend. V ("No person shall . . .be deprived of life, liberty, or property, without due process of law. . . ."); U.S. Const. amend. VI (guaranteeing the accused shall be "informed of the nature and cause of the accusation . . . .").
[28] *See United States v. Debrow*, 346 U.S. 374, 378 (1953).
[29] *See* Fed. R. Crim. P. 7(c)(1) ("The indictment or information must be a plain, concise and definite written statement of the essential facts constituting the offense charged . . . ."); 18 U.S.C. § 3366.
[30] *See United States v. Crayton*, 357 F.3d 560, 568 (6th Cir. 2004); *United States v. Salisbury*, 983 F.2d 1369, 1375-76 (6th Cir. 1993).
[31] *See United States v. Tanner*, 279 F.Supp. 457, 474 (N.D. Ill. 1967).

[the defendant] could not discern the nature of the charges pending against him and the time frame in which the alleged acts occurred, or that the indictment did not provide … adequate information to provide a defense."[32] Relevant factors include:

        (1) the complexity of the charges;

        (2) the indictment's clarity;

        (3) and the degree of discovery available to the defendant.[33]

        39.      It is difficult to evaluate the complexity of the charges because of the lack of any substantive factual allegations. The SI's date ranges could encompass a vast range of potentially relevant, complexly interrelated acts or could involve a few simple acts. If the government's intent is to prosecute Mr. DeHart for the acts alleged in the Affidavit to the Criminal Complaint it should say so rather than leave him guessing as to what conduct on his part the government considers illegal. Without any substantive factual allegations the status of the complexity of the charges remains unclear and unclarifiable.

        40.      Likewise, the SI is anything but clear. Mr. DeHart has been left to guess what acts the government considers illegal, rather than having been put on notice as to what charges he must defend himself against. The state of the discovery in this case does nothing to help clarify matters.

        41.      The government has provided discovery in this case but the same problems identified by Mr. DeHart's previous computer expert in a hearing before this Court on April 20, 2012 still remain, and undersigned counsels' current forensic examiner has identified more.[34]

---

[32] *United States v. Azad*, 809 F.2d 291, 296 (6th Cir.1987), cert. denied, 481 U.S. 1004 (1987). See also *United States v. Birmley*, 529 F.2d 103, 108 (6th Cir.1976).

[33] *United States v. Pendergrass*, No. 3:06-CR-00147, 2006 WL 3098871 at *2 (M.D. Tenn. (Nashville Div.) Oct. 30, 2006).

[34] *United States v. Matthew Paul DeHart*, Tr. of Examination of James KempVanee, 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) April 20, 2012) (ECF #102).

The defense will be addressing its discovery issues with the government's current production in a Federal Rule of Criminal Procedure 16 letter to the government shortly in hopes of clarifying the matter.

42. It is well established that the bill of particulars is not a discovery device, and should not be used as a proxy for discovery.[35] The defense does not seek discovery through this motion for a Bill of Particulars, rather it seeks clarity as to what conduct the government considers illegal so that the defense can make sense of the discovery, mount a proper defense, and avoid surprise at trial. The government's current production appears to involve data derived from multiple computers and data storage devices for which chain of custody and authentication data is currently unavailable, among other issues. If the computer chats that formed the basis for the Affidavit supporting the Criminal Complaint are relevant to the SI, then this should be specified so Mr. DeHart knows, for instance, that he needs to seek discovery of the alleged victims' computers or devices, which the government has not provided, in order to examine them to determine if the chats quoted in the affidavit are authentic. Given the government's production's volume, and the SI's lack of guidance as to what is relevant, a Bill of Particulars from the government would clarify what facts the government believes constitute Mr. DeHart's alleged illegal acts and allow him to properly defend himself rather than be surprised at trial. A Bill of Particulars will focus the discovery issues and increase judicial efficiency by avoiding needless motion practice over matters that ultimately prove to be irrelevant. In short, the current state of the discovery does nothing to alleviate Mr. DeHart's need for a Bill of Particulars from the government.

43. Furthermore, if the government is going to argue that Mr. DeHart committed

---

[35] *See United States v. Salisbury*, 983 F.2d 1369, 1375 (6th Cir. 1993).

11

multiple illegal acts during the date ranges alleged in the SI, it should be required to list those acts in a Bill of Particulars. The situation is analogous to when courts require that the government provide detailed disclosures as to the dates and times of alleged conspiratorial acts in a Bill of Particulars.[36] Date and time should be specified, as should the manner in which the alleged acts occurred. Specifics as to date and time are necessary to allow Mr. DeHart to understand the charges alleged against him and avoid unfair surprise.

## CONCLUSION

Defendant respectfully requests the following particulars:

I. <u>COUNT ONE: 18 U.S.C. 2251(a) and 2251(d)</u>

1. The dates on which the defendant allegedly committed the charged offense;

2. The places where defendant allegedly committed the charged offense;

3. In what manner the defendant allegedly "employ[ed], use[d], persuade[d], induce[d], entice[d], and[/or] coerce[d]" the minor child to engage in sexually explicit conduce for the purpose of producing "any visual depiction of such conduct"

4. What visual depiction(s), including specifics such as creation date and type of depiction, were allegedly produced as a result of the alleged conduct;

5. How the alleged visual depiction(s) were allegedly "transported and transmitted" using any means or facility of interstate commerce;

6. Which "means or facilit[ies]" of interstate commerce were allegedly used in the alleged transportation or transmission;

---

[36] *See United States v. Adan*, No. 3:10-CR-00260 (M.D. Tenn. (Nashville Div.) March 1, 2012); *United States v. McGhee*, No. 3:06-CR-019 2007 WL 1296009 at *3 (E.D. Tenn. (Knoxville Div.), May 1, 2007); *United States v. Honneus*, 508 F.2d 566, 570 (1st Cir. 1974); *United States v. Davis*, 330 F.Supp. 899, 902-03 (N.D. Ga. 1971); *see also, Glasser v. United States*, 315 U.S. 60, 66 (1942) (stating a purpose of a Bill of Particulars is to provide "particularity of time, place, circumstances, causes, etc.").

7. Any other details necessary to properly inform the defendant of the charges alleged against him, to prevent double jeopardy, to minimize unfair surprise, or to fulfill any other purposes of Rule 7(f)[37] for Count One.

II. COUNT TWO: 18 U.S.C. 2252A(a)(1) and 2252A(b)(1)

1. Where the defendant is alleged to have been in the "Middle District of Tennessee and elsewhere" on January 23, 2008;
2. Whether the government alleges the defendant committed the alleged shipping and transportation, or only the attempt thereof;
3. The places where defendant allegedly committed the charged offense;
4. What visual depiction(s), including specifics such as creation date and type of depiction, were allegedly shipped or transported as a result of the alleged conduct;
5. How or by what method(s) the alleged child pornography was allegedly "shipped and transported" in interstate and foreign commerce;
6. Where or to whom the alleged child pornography was allegedly "shipped and transported."
7. Any other details necessary to properly inform the defendant of the charges alleged against him, prevent double jeopardy, to minimize unfair surprise, or to fulfill any other purposes of Rule 7(f) for Count Two.

III. COUNT THREE: 18 U.S.C. 2251(a) and 2251(d)

1. The dates on which the defendant allegedly committed the charged offense;
2. Where the defendant allegedly committed the charged offense;
3. Where Victim B was at the time the charged offense was allegedly committed;

---

37  *See* Fed. R. Crim. Pro 7(f).

13

4. How the defendant allegedly employed, used, persuaded, induced, enticed, or coerced Victim B;

5. What "sexually explicit conduct" was allegedly engaged in;

6. What visual depiction of such conduct was allegedly produced;

7. How such visual depiction was allegedly produced;

8. Who allegedly produced such visual depiction;

9. How such visual depiction was allegedly "transported or transmitted;"

10. What "means or facility of interstate commerce" was used to allegedly transport or transmit such visual depiction;

11. Whether the defendant allegedly committed or allegedly attempted to commit the charged offense;

12. Any other details necessary to properly inform the defendant of the charges alleged against him, prevent double jeopardy, to minimize unfair surprise, or to fulfill any other purposes of Rule 7(f) for Count Three.

Dated:	June 8, 2015

/s/ Tor Ekeland
Tor Ekeland
Frederic Jennings
Tor Ekeland, P.C.
195 Water Street
Brooklyn, NY 11201
Tel: 718.737.7264 ext. 700
Fax: 718.504.5417
Email: tor@torekeland.com
        fred@torekeland.com